Good morning. May I please the Court? Phil Talmadge here representing Trans-System, Inc. I'd endeavor, Your Honor, to reserve five minutes of rebuttal time if I could, and I recognize the admonition to previous counsel. Washington law unambiguously commands in R.C.W. 422.070 and in construing case law that in actions involving the fault of more than one entity, the jury must allocate fault to each entity that causes a plaintiff's injuries with some statutory exceptions. Although this allocation issue was squarely and repeatedly presented to the district court in this case, that court took it upon itself at the conclusion of the evidence to effectively rule as a matter of law that the allocation issue was off the table, refusing then to instruct the jury on allocation despite the party's prior agreement that the allocation issue was live and should be presented to the jury in this case. When you refer to prior agreement, do you mean the jointly proposed instruction? Correct. All right. It's tantamount to an agreement, Your Honor. Both parties agreed that allocation was a live issue. And that happened after the settlement with Cosmo, right? I believe that's correct. Did the district court rule on that? Did it issue an order? I'm interested in whether this request for an apportionment instruction was actually preserved. I didn't see the district court actually ruling on that. It just seems to get lost in the shuffle. It sort of did. But there was a motion in limine that was presented in connection specifically with respect to the Cosmo settlement. And there was some question raised at that point as to how you would treat allocation under the circumstances. And it's quite remarkable. If you look at actually at the record here at page number, I'll get that page number to the court. There was actually a specific assertion by the plaintiffs in this case that regardless of how the settlement was handled, that TransSystem would be able to argue the issue of allocation to the jury in this case. And which seemed appropriate if the evidence supported it. Correct. And had there been an objection. It seems to me, as I look through this briefing, your argument is that you're entitled to the instruction because you're, well, for a couple of reasons. One is that the law would have allowed it. Another is that the evidence would have supported it, although it seemed pretty thin. Because there's an awful strong indication to me that your theory had, your client's theory had shifted. But if I agree with it, you would have been entitled to the instruction had you asked for it. And I understand there was a jointly proposed instruction. Correct. There was also an opportunity to object when it was apparent that the judge was not going to include that instruction. Why do you think this was preserved? Because it was an issue that was presented throughout the case. So starting with the first proposition, there was evidence presented in trial regarding the allocation issue. First, the question about permission to vent. Secondarily, the question about the scrubber being defective. Right. Evidence was used. Did the district court ever rule? I mean, I could not find a place where the district court actually ruled on a request for an apportionment instruction. So if the district court had ruled and said, no, you're not entitled to it, then you wouldn't have to raise it again because you would have a futility argument. But the district court never expressly ruled. And when the district court asked for objections on its instructions, there was not an objection. We want our fault to be apportioned instruction, which has been left out. Well, it wasn't as crisp as you'd like. There's no question, Your Honor. The obvious thing would be in the record. You have the we object to the giving of instruction X. We object to the failure to give instruction number Y. You don't have that specifically. But you do have the indication that the parties conversed about the issue in chambers.  Isn't that fatal to not preserve that objection from the record? No, because ultimately any objection would have been futile. This issue was repealed. Well, how do we know that it was futile when the district court didn't have that issue before it? I mean, it did not reject the apportionment instruction that was jointly requested. It just ended up not being in the final group of instructions. So we don't know how the district court would rule had that objection been raised. Well, we do know this. The district court had denied summary judgment to Cosmo on the presence of fact issues relating to Cosmo's fault. We know that the court, after the fact, in response to the post-trial motions, made a statement that somehow it thought the evidence was insufficient, even though it had previously determined that that very same evidence was sufficient to deny summary judgment to Cosmo. So the issue was, in fact, joined throughout the case. And let us not forget that we've argued that there was an estoppel issue present here. This issue was jointly presented by the parties. It was pleaded. It was argued. It was presented to the court. It was something that was found in the pretrial order. That's why I think it's very important, because all of that would have been true prior to Cosmo settling. I think these jointly proposed instructions happened after Cosmo had settled, which I think would seriously strengthen your estoppel argument. But the part of the record, forgive me for interrupting, but the part of the record that I'm really grappling with is the waiver issue. And I see the on-record objection, but which I think you're right, it's a soft sell there. It is. It's really tough. But just before that, I think the record shows that just before that, there was an in-chambers conference. What I'm trying to get at is that. Do we know what was said in chambers to discuss the jury instructions? We don't. It was off-record? It was off-record. And then the party came into the courtroom, and that's where we get this objection that's on the transcript. Is that right? Right. We do know as well that counsel in opening argument evidenced no intention to waive the issue. If you could look at excerpt of Record 62, in his opening statement, and again, these issues were not cleanly presented. But counsel basically said, look, the issue in this case is where is Cosmo, and why aren't they here now? But the difficulty that I have is I think, well, I just told you what one of them is, which is the objection. The second is that at the end of the day, Judge Bryan said, who, of course, watched all the evidence very diligently, and there seems to be quite a delay in the interval between the sulfur dioxide exposure and the potential ammonia exposure. Right. And a delay of how long? Several hours, I think. It's a couple-of-hour issue, yes. Right. So he said, I think, at least post-trial, he said the jury found one or the other, but there wasn't a scenario where this plaintiff could have been exposed to both. And they apparently believed one set of witnesses and not the other. Well, the critical thing in response to your question, Your Honor, is this, that with respect to the allocation issue in Washington, evidence deduced either by the plaintiff or by the defendant is sufficient to allow the allocation issue to go to the jury. Adcox makes that very explicit. Either the plaintiff or the defendant. I'm agreeing with you on that point, counsel. I'm agreeing with you. I think that you had evidence some. It seemed to me that your theory sure shifted after you got your new expert report. But there was some evidence about Cosmo. There's the unidentified individual who said, go ahead and vent, and there's the scrubber. If nothing else, you had that. Right. But I still think it was incumbent upon you to object. Hey, where's our instruction? Well, I think in this case the issue was so intensely presented to the trial court here. You have it pled. You have it argued in the pretrial orders. You have a jury instruction that's offered. You have a verdict form that offers the issue up. This issue was live and presented. It was raised in opening argument. You have it the subject of a discussion in the supplemental motion in limine that addressed specifically the Cosmo issue. I think it was clearly addressed to the district court, and under the circumstances, the district court sort of abruptly decided on its own, we're not going to consider the issue. It is tantamount to what the court, this court, found in Gurin to be reversible error, which was a district court that simply said as a matter of law, I'm not going to allow the allocation issue to go to the jury in a motion for summary judgment. But we didn't have that kind of a ruling here. We don't have that kind of a ruling specifically here. No, we don't. Okay. But we have an issue that's. Let me ask about the difference between the apportionment instruction and just regular joint and several liability, which could also have been argued. So that one of the arguments opposing counsel makes is that trans would not have been entitled to an apportionment instruction because this case involves hazardous substances, which is an exception. I didn't see any definition of hazardous substance in the statute. I don't know how Washington State defines that. But are they correct that apportionment instruction is not clearly required by Washington law under the circumstances? Well, their argument is a belated argument, and there's a certain disingenuity about raising this issue as late as they've raised it. They raised it for the first time in their brief. And leave us not forget that we've never known of the existence of the terms of the settlement between Cosmo and Crow. They've never revealed that. And the statute requires five days' notice, revealing of the terms of the settlement, so that there can be a reasonableness hearing at which the offset that's available to the non-settling defendant can be argued before the trial court. Does trans have any options now available to ensure that Cosmo pays what its fair share of the settlement, assuming that trans has that sort of argument? Or procedurally, is there no way to do that? Procedurally, there's no way. The fact of the matter is the only protection that a non-settling defendant has under the old regime of joint and several liability is this reasonableness hearing process, because statutorily, any contribution claim that that joint and several non-settling defendant might have had is discharged by the existence of the settlement. So was there a reasonableness hearing? No. So there was a procedural violation? So you have a claim for that, at least, that there was some violation of procedure. The statute specifically requires five days' notice to the non-settling defendant, no notice given. So could you pursue that on a due process or a statutory basis? Well, I suspect we could. Did you raise that? Well, we didn't raise it because we raised it in argument on reply, Your Honor, certainly, and it certainly is the subject of our statement of additional authority here. The fact of the matter is, as I say, this is a rather disingenuous argument to be had. When the Cosmo settlement came up, the issue was certainly raised about whether or not there was an opportunity for this issue to come up, and at the time, in response to the motion in limine on this settlement subject, basically Crow's position was not to raise this question under 422-07073, never gave notice of the settlement, never gave its terms to us, and it basically specifically argued at that time that allocation was going to be available to trans systems. So its position, you know, dramatically changed in its appellee brief on this topic. But from the perspective of whether the district court erred by not giving that instruction to Esponte, there's at least a question as to whether it's a plain error in light of the exception for hazardous substances. At least that's part of the argument, as I understand it. Absolutely. There's certainly a plain error issue with respect to the unambiguous policy of Washington law about allocation of fault. With the exception for hazardous substances, though. Is there an argument that this is clear on its face, that this ammonia, aqueous ammonia release does not meet the exception? Is there a case that would help us understand that?  In which the hazardous substance issue has been applied outside the context of asbestos. Asbestos, yes. So the issue was never allowed to be joined, basically, at the district court level. And one of the issues about allowing a party to raise a belated argument of this sort is there has to be an opportunity for an issue to be surfaced and developed at the trial court level. You didn't have that here, no opportunity to do so, because there was never any signal that the issue was even live. Do you want to save the rest of your time? Your Honor, thank you. We'd ask the court to reverse the trial court's decision here and award a new trial. Thank you. Thank you. May it please the court, my name is Timothy Goslin. I'm here on behalf of the appellees Stephen and Cheryl Crow and their children. At counsel table is Mike Fisher. Also here in chambers is Tamara Clower and Daniel Kyler. They were trial counsel in this case. They will not be presenting argument. At the very beginning of trial in this case, JJW's counsel told the jury, the first statements out of their mouth was that Mr. Crow was injured on September 27 at approximately 3 p.m. He and a number of his co-workers were exposed to an unknown gas or odor emanating from the Cosmo Specialty Fibers facility. Counsel, is it your position that he really wouldn't have been entitled to this instruction if he had asked for it? It is. Why? Not our. That's not our position. Our position is that the allocation defense was abandoned and that process began in June prior to trial. With the new expert? With the pretrial order and the disclosure of the new expert's report. That position was carried through. If that's the case, then I'm trying to make sense of, forgive me for interrupting, but I just want to give you an opportunity to understand this chronology. Why, then, were there jointly proposed and agreed upon instructions, an allocation instruction after Cosmo settled? After Cosmo settled? Because at that point in time, it was unclear that JJW was abandoning the defense. As you asked. So we didn't have the new expert yet? They did not have the new expert that had been disclosed to us, nor had they taken the position at that point in time. But you didn't know about the sulfur dioxide theory yet? That's correct. Cosmos was out, so they still could have come forward with an allocation theory to seek to have negligence apportioned to Cosmos on the basis of the unidentified person who said, go ahead and vent the truck, or because the scrubber didn't function properly. Is that it? Well, that's correct. I'm sorry. I didn't. The it is, why would you have agreed to the allocation instruction, the apportionment instruction after Cosmos settled? And I think the answer that you just gave me, that I understood you say, is because we didn't yet know about sulfur dioxide, the new theory, right? And your understanding is there still would have been some evidence to argue that Cosmos should share some blame in the form of the person who said, go ahead and vent the truck and the scrubber that malfunctioned. There could have been. Right. So it's not your position, getting back all the way to my first question, that they wouldn't have been entitled to the instruction if they'd asked for it? That is correct. Got it. Okay. And is that still your position? That is still our position. Had they pursued the theory, they would have been entitled to it. So you, the briefing suggested that the hazardous substance exception applies here. Do you now say it does not apply? Well, this is the problem. Had the issue actually been engaged by the time of trial, the issue of whether allocation applied or didn't apply could have been addressed at that point. The reason it wasn't addressed wasn't some estoppel. It was the fact that allocation was no longer an issue by the time we got to trial. This was a single-party claim that only a single party was at fault. Well, they did introduce some evidence, as we've just discussed, about Cosmo. So could you look at the and tell me why this, the objection that we've got on record is inadequate? What's your strongest argument? Sure. The defense takes exception to the verdict form. It's our position that rather than, quote, plaintiff's negligence claim, so on and so forth, that it should include J.J. Williams. Correct. Was J.J. Williams negligent, yes or no? Correct. And the court hears this and then says, right, right, as in I'm acknowledging your objection. Why is this inadequate? It's inadequate because it does, again, it fits with their theory of the case that does not involve allocation. What JJW was attempting to establish, and it's replete through the record, and I direct the court back in particular to the motion to strike Dr. Carter's opinion where JJW tells the court, it is, we now know that it was Cosmo that was responsible for the release. So when you have this exception, when you take this. And there's two, these two releases, forgive me, those two releases are two hours apart. Correct. They're not related. It isn't an issue of combined injury. So what is happening here is JJW is doing exactly what a skilled defense lawyer, defense lawyer would do, and that is try and get as many questions in front of the jury. Well, he's entitled to it, though. If the jury had believed his expert, they could have found that this, that Mr. Crow was exposed to sulfur dioxide, right? They could have. Okay. But they didn't need a separate jury instruction for that determination. That determination would be found by determining that JJW was not negligent. If JJW was not negligent, JJW, then somebody else. Could have done that, but they had an affirmative defense, too, right? Of? Wasn't there an affirmative defense that they're arguing was missing in the instruction? Which affirmative defense? I mean, is it an affirmative defense that somebody else is responsible? Yes. So they said that one theory was that Cosmo was 100 percent responsible because the injury was caused by sulfur dioxide, which had been released only by Cosmo, not by Trans Systems. Correct. And then they also, the district court acknowledges they also retained a theory that Cosmo was partially responsible for the aqueous ammonia release due to its negligence. But I don't see that, that aspect of their defense in the two objections to jury instructions that they asked. Let me respond to both. The defense that Cosmo is 100 percent responsible is not an affirmative defense. That is a defense that we are not liable and is not pled as an affirmative defense. Right. And did that make it into the, I think it wasn't that proposed instruction number two, did that make it into the instructions to the jury? That Cosmo was responsible? I'm going to find jury instruction number two. I appreciate your point, but it's jury instruction number two asserts Cosmo's negligence contributed. Okay. This was not given. I think I just answered my own question. So it's not an affirmative defense. The allocation is an affirmative defense, and evidence of that is the defendant's statement in the pretrial order. At excerpts of Record 185, JJW says, Defendant TSI JJW is not required to prove fault of any nonparty entities. And that's true if the fault is 100 percent, if all of the injury was caused by someone else. If there was shared fault, if there was allocation, then that's an exact false statement, because as their affirmative defense, it is their burden of proof to prove the fault of JJW. But here in the pretrial order, they're telling the court they have no duty. So to the extent their theory is the injury was caused by sulfur dioxide, it's undisputed we didn't release sulfur dioxide, therefore we can't be held liable. Correct. Okay. So they don't have to prove that somebody else released sulfur dioxide. That's correct. Okay. But the district court acknowledged that there was a ‑‑ there was evidence or that there was still a subtheory that if the injury was caused by aqueous ammonia, we only had partial responsibility for that because COSMA was also negligent. And that's the question I have about their objections to the jury instruction. Is that theory anywhere in the two objections that Mr. Hornbrook did make? And our position is no, it is not. Nowhere in that exception is the ‑‑ is there a discussion of allocation? Is there a ‑‑ and keep in mind that the right of allocation arises only when there is indivisible harm caused by two or more entities. There is no mention of any kind of shared fault, shared responsibility in the allocation instruction. I would also disagree with you that the trial court ever recognized during trial after the Carter report came out ever recognized that JJW was presenting a theory that was consistent with allocation. On this record, what is equally ‑‑ what is just as plausible to have happened was when the counsel went into the chambers to discuss jury instructions, the judge is going through the instruction and gets to the allocation instruction and says, well, this one doesn't apply anymore because of your theory. We don't know what happened there. Could you answer my question about proposed jury instruction number 2, which I understand and please correct me if I'm wrong. I understand you agreed to this and you agreed to it after COSMO settled. And this says defendant denies those claims and also asserts after listing plaintiffs, defendant denies those claims and also asserts as an affirmative defense that any injuries or damages suffered by the plaintiffs were proximately caused by the negligence of COSMO specialty fibers. Correct. That is in the instruction. That does not create a burden of proof. My question a minute ago was whether or not there was any instruction about this affirmative defense that made it to the jury and you said there's no affirmative defense, there's just a lack of ‑‑ they just had to prove a lack of an element on the proximate cause. It seems to me they were asserting both and you agreed to this proposed instruction. It may have been termed that way in the proposed instruction. You agreed to proposed instruction number 2, right? Those were joint instructions, yes. That's a yes? Yes. Okay. I'm not trying to make it difficult. I'm truly trying to understand. Sure. And the Monday morning quarterbacking is always a little challenging. But that's what this says and this was jointly proposed and it was jointly proposed after COSMO settled. So my question is, was there any instruction given to the jury about an affirmative defense? Not that I am aware of. Thank you. Now, back to the point. Our point is that by the time of trial, COSMO had abandoned the affirmative defense of allocation of fault. They had settled on a theory of sole liability on the part of COSMO, which is not a joint and several liability situation that would even trigger an allocation opportunity. So had Crow asked for the apportionment instruction, are you saying that the district court would have denied it because it wasn't supported by any facts in the record? Had COSMO or had JJW requested an allocation instruction, yes. That's exactly what would have happened. You just told me you thought they would have been entitled to the instruction. I'm sorry. I misspoke. We would have objected that the evidence was sufficient to take the case to the jury after trial. My first question to you was whether or not if they had a – this is an important point, counsel. And I think Judge Okuda has the same question. Is it your position that if they had requested the apportionment instruction, they would have been entitled to it based upon the evidence that did go to the trial, that had nothing to do with the sulfur dioxide defense? They still had evidence of the scrubber and the unnamed individual who said go ahead and vent the truck. My answer is no, they would not have been entitled to that instruction after the evidence was presented because the evidence on its face was insufficient to go to the jury. The evidence of the scrubber was never tied to the actual condition. We don't even know when the scrubber was – whether it broke, whether – when it was replaced. We don't have any of that information and there's no testimony tying any condition in the scrubber to the condition. Why wouldn't it have been enough if the jury had believed him? Why wouldn't it have been enough that somebody from Cosmos told this individual he could vent the truck? I can tell you why. Because of the testimony that was presented, the entire testimony that was presented. And this is the – let me find the – It's in Judge Bryan's order. Excuse me. I'm looking for one piece of paper here. Sure. Oh, here it is. So the difference now at the time of trial – and this is different from summary judgment as cases develop. At the time of trial, Mr. Goodwin testified about this conversation with the jury of the Cosmo employee. And what he said is, and it's your testimony that the environmentalist gave you permission to just go ahead and vent to the atmosphere. Is that right? Answer, yes. Question, is that something that was surprising to you? And the answer – this is the important answer. Not really, because of how far we were back. And we're surrounded by the ponds. Like I said just a minute ago, the fumes are attracted to moisture. So I am assuming that he was thinking the same thing, that fumes would just be going right into the pond. Then Mr. Goodwin got into his truck and drove away from the ponds. He's saying that he assumes that the Cosmo employee gave him permission because of where he was. Then he got into the truck and drove away from where he was. There was no causal connection, could be no causal connection between what the Cosmo employee told, allegedly told Mr. Goodwin and what Mr. Goodwin actually did. And that's the difference between summary judgment and the trial, is now there's new evidence. And the evidence is more specific, and the evidence clearly shows that Mr. Goodwin had no permission from anyone to drive away, and it was driving away that made the difference. Does that address the Court's question? Yes. Please wrap up over your time now. Thank you, Your Honor. So we believe the trial court should be affirmed because, one, the allocation issue wasn't a part of JJW's theory at trial. Two, it wasn't properly accepted. Two, three, they weren't entitled to it under the evidence that was presented in the case. And four, the evidence that the testimony of Dr. Firestone's testimony regarding causation was sufficient under the facts of this case. Thank you, Your Honor. Thank you. We have some time for rebuttal. Thank you, Your Honor. With all due respect to counsel in response to Judge Kristen's questions, this is contrary to the position that Crowe's taken throughout the course of this litigation. If you look at docket 84, which is their opposition to the summary judgment motion brought by Cosmo, they specifically argued that if this evidence came in regarding the venting and the question about the scrubber, it was sufficient to establish a question of fact upon which summary judgment then should be denied. But was that before or after the sulfur dioxide theory arose? Before the sulfur dioxide theory, Your Honor. But the point I'm getting at here is regardless counsel's argument now, no, there was insufficient evidence adduced with respect to the issue of fault associated with the ammonia gas issue. That's simply contrary to the position they've taken throughout the course of the case, contrary to the district court's own position in denying summary judgment as well. And so what we have here is basically an argument that's calculated to avoid the very strong public policy of Washington that fault needs to be allocated. Evidence was adduced that allowed that to occur, and we were entitled to defend the case in the alternative as has been observed by the panel. We could argue that the sulfur dioxide was the issue. We could also defend their position, which was their position throughout, that it was the ammonia gas that was at issue. Now, counsel has stood up and said, well, they waived this issue. That is baloney. It's baloney for this reason. The issue was argued throughout the course of the case by Trans System. An instruction was offered. It was the subject of pretrial orders. It was argued to the jury. Evidence was adduced on the issue. But I think probably the encapsulating point on this topic is the opening argument of counsel. If Trans System's trial counsel was intending to forego the issue, would he have said at excerpt of record 62, so in wrapping up, counsel asked a really good question as he was concluding his opening. You might wonder why we are here. That is a good question. It is not the most important question. The most important question in our view is, is why is Cosmo not here and where are they? We intended and did argue below the issue of allocation of fault to Cosmo. But that would, that statement you just read would be the same whether you thought Cosmo was 100 percent liable or only partially liable. It is true, Your Honor, but I think the point is it wasn't an issue that was abandoned because the evidence was adduced at trial regarding the venting and the issue of the scrubber. If the issue of allocation of fault to Cosmo was utterly irrelevant, that evidence was significant to the issue and it was significant enough under Washington public policy to allow the allocation issue to get to the jury. The district court foreclosed the opportunity for the issue to be presented. We ask the court to reverse and grant a new trial here. Thank you. Thank you. We thank both parties for their arguments. The case of Crow v. Transystem, Inc. is submitted and we'll next hear argument in Hill v. Glebe.
judges: Ikuta, Christen, Choe-Groves